# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

**TRAVIS LEPPLA,**                                            Case No. 3:19 CV 2487

        Plaintiff,

        v.                                                Magistrate Judge James R. Knepp II

**JULIE KAGEL,** *et al.***,**

        Defendants.                             MEMORANDUM OPINION AND ORDER

## INTRODUCTION

On April 10, 2020, Travis Leppla ("Plaintiff") filed his first amended complaint asserting claims under 42 U.S.C. § 1983 and state tort law against former Marion County Clerk of Courts Julie Kagel and ten John Doe employees of the Marion County Clerk of Courts' Office. (Doc. 16). The district court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. Currently pending before the Court is Defendant Julie Kagel's ("Defendant") Motion to Dismiss (Doc. 17), to which Plaintiff filed an opposition (Doc. 19), and Defendant replied (Doc. 20).

For the reasons contained herein, Defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

At the outset, the Court notes that it generally may not consider documents outside the pleadings when deciding a motion under Rule 12(b)(6). *Gunasekera v. Irwin*, 551 F.3d 461, 469 n.4 (6th Cir. 2009). However, the Sixth Circuit "has taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir.

2001). Documents referred to in a complaint, which are central to the claim, and are attached for a motion to dismiss form part of the pleadings. *Id.* (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999)). "At this preliminary stage in litigation, courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of government agencies." *Id.* The Court therefore finds it appropriate to reference the Judgment Entry from the Marion County Court of Common Pleas (Doc. 17-1), the Order to Appear and Show Cause (Doc. 17-2), and the Certificate of Attendance (Doc. 17-3) in addition to the Amended Complaint. These documents are referenced in the Amended Complaint and attached to Defendant's Motion to Dismiss.

Accepting the facts within the Amended Complaint (Doc. 16) as true, and viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

At all times relevant, Plaintiff resided in Auglaize County, Ohio. (Doc. 16, at 3). Before the events underlying Plaintiff's complaint, the Marion County Child Support Enforcement Agency filed a complaint for child support from Plaintiff for his minor child. (Doc. 17-1, at 1). A judge of the Marion County Family Court ordered Plaintiff to, *inter alia*, attend a parenting program ("SUCCESS") within 90 days. *Id.* at 4.

Plaintiff did not attend the SUCCESS program within 90 days. (Doc. 17-2, at 1). A Marion County Family Court judge issued an Order to Appear and Show Cause as to his failure to attend the program. *Id.*; Doc. 16, at 3. The order permitted Plaintiff to attend the SUCCESS program before the scheduled hearing date, in which case the hearing would be canceled. (Doc. 17-2, at 1).

Plaintiff was served notice of this hearing on June 20, 2018; the hearing was scheduled for August 7, 2018. (Doc. 16, at 3).

Plaintiff directly contacted then-Marion County Clerk of Courts Julie Kagel ("Defendant") upon receiving the notice. *Id.* Defendant reportedly told Plaintiff that because he had previously attended a program equivalent to the SUCCESS program, he did not need to attend either the SUCCESS program or the August 7 hearing. *Id.* Plaintiff attended neither. *Id.* at 4.

A Marion County Court of Common Pleas – Family Division judge issued a bench warrant on August 12 for Plaintiff's arrest due to his failure to appear at the hearing. *Id.* Plaintiff was arrested on September 7 and brought before the Auglaize County Municipal Court on September 10. *Id.* at 4-5. This same day, the arrest warrant was returned as executed. *Id.* at 5. Plaintiff posted a bail bond and was released. *Id.* at 5. Plaintiff was ordered to appear in the Marion County Court of Common Pleas by September 17. *Id.*

On September 10, Plaintiff called the Marion County Clerk of Courts and again spoke directly with Defendant. *Id.* This time, Defendant reportedly told Plaintiff he needed to attend the SUCCESS program but did not need to appear before the court. *Id.* On September 13, Defendant refunded Plaintiff's bond payment without a court order to do so. *Id.* at 6. At some point, Defendant further informed Plaintiff the arrest warrant was cancelled or recalled. *Id.*

On October 16, Plaintiff attended the SUCCESS program and received a Certificate of Attendance. *Id.*; *see also* Doc. 17-3, at 1 (certificate). An "unknown representative" of Defendant or the Marion County Clerk of Courts attended the program to confirm Plaintiff's attendance. *Id.*

Defendant received a copy of the Certificate of Attendance, but did not date and time stamp it, enter it on the docket, or convey it to the court. *Id.*[1]

The August 12 bench warrant for Plaintiff's arrest was either never recalled or the recall was not properly documented. *Id.* at 7. On October 28, Plaintiff was arrested a second time on the same warrant. *Id.* Plaintiff informed the arresting officers he had already been arrested on the warrant and provided them with copies of the Certificate of Attendance and the refund of his paid bond. *Id.* at 8. Law enforcement determined that, based on the information available to them, the bench warrant was valid and transported Plaintiff to the Auglaize County Correctional Center. *Id.*

On October 29, a Marion County Probate Court Investigator advised that the warrant had been recalled. *Id.* This information was provided to the Auglaize County Sheriff's Department, and Plaintiff was released from jail. *Id.* As a result of his arrests, Plaintiff missed work multiple times and was ultimately terminated from his employment. *See id.* at 4-5, 8, 11.

## STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests the complaint's legal sufficiency. "In determining whether to grant a Rule 12(b)(6) motion, the [C]ourt primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001). The Court is required to accept the allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Scheuer v. Rhodes*,

---

1. As discussed further below, this is disputed. The Certificate bears a court filing stamp dated October 23, 2018, at 4:18 p.m. *See* Doc. 17-3, at 1. However, Plaintiff submits a copy of the court docket in his case, printed on October 28, 2018 at 9:15 p.m., which does not reflect filing of the Certificate. *See* Doc. 19, at 22.

4

416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

Although a complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949).

## DISCUSSION

In his Amended Complaint, Plaintiff asserts Defendants violated 42 U.S.C. § 1983 in arresting and detaining him; he further asserts state tort law violations of false arrest and imprisonment, intentional infliction of emotional distress, and negligence. *See* Doc. 16. Defendant argues Plaintiff's amended complaint should be dismissed because (1) she is immune from suit, and (2) the complaint fails to meet minimum pleading standards under Federal Rule of Civil Procedure 8(a). *See* Doc. 17, at 7-18. Because Defendant's immunity is sufficient to dispose of the case, the Court does not reach the question of whether Plaintiff's amended complaint satisfies minimum pleading standards.

As discussed below, as clerk of courts, Defendant is immune from suit under § 1983 under the doctrines of absolute quasi-judicial immunity, sovereign immunity, and qualified immunity. A

5

claim must be dismissed if, as a matter of law, it is clear that no relief is possible under any set of facts consistent with the allegations, including "claims against which it is clear that the defendants are immune from suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Because Plaintiff's federal claims are rightly dismissed, the Court declines to exercise pendent jurisdiction over Plaintiff's state claims and dismisses them without prejudice.

Absolute Quasi-Judicial Immunity

Absolute judicial immunity "operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities," including § 1983 suits. *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007).[2] "This far-reaching protection is justified by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Id.* (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 783 (6th Cir. 1999)). This immunity has been extended to non-judicial officers, such as a clerk of courts, who is performing judicial functions. *See Johns v. Bonnyman*, 109 F. App'x 19, 21-22 (6th Cir. 2004); *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). And this immunity is broad, applying "to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice". *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004).

Another judge in this district has explained "[a] clerk of courts is entitled to absolute immunity when performing judicial functions even if acting erroneously, corruptly or in excess of jurisdiction." *Mason v. Powers*, 2010 WL 3036773, at *2 (N.D. Ohio). Lawsuits alleging harm from nonjudicial actions, or from actions taken in the complete absence of jurisdiction are the only

---

2. In Reply, Plaintiff seemingly concedes that Defendant is immune in her official capacity, but asserts, without citation to authority, that she is not immune in her individual capacity. *See* Doc. 19, at 10 ("The doctrine of absolute quasi-judicial immunity protects Defendant Kagel and the county in their respective governmental positions. However, it does not protect Defendant Kagel in her individual capacity."). *Dixon* holds otherwise. 492 F.3d at 674.

actions against a quasi-judicial officer not barred by this immunity. *DePiero*, 180 F.3d at 784 (citing *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991)). There is no allegation or evidence that Defendant acted in complete absence of jurisdiction. It must therefore be determined whether the acts Plaintiff challenges were judicial.

An act is judicial when it "is a function normally performed by a judge" and whether the party "dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). "In other words, [the court] look[s] to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 13. The nature and function of an act is unrelated to the specific actor who performed it. *Id.* (citing *Forrester v. White*, 484 U.S. 219, 229 (1988)).

The Court thus turns to whether Defendant's actions were judicial. There are three specific actions of Defendant at issue: first, Defendant's alleged miscommunication regarding Plaintiff's hearing attendance, whether deliberate or otherwise; second, Defendant's alleged failure to recall or failure to inform the court of the recall of the August 12 arrest warrant after it was returned as executed to Defendant on September 10; and third, Defendant's alleged failure to timely file the Plaintiff's Certificate of Attendance from the SUCCESS program. All are judicial in nature and function.

It is clear Defendant's communication with Plaintiff is protected by quasi-judicial immunity. There is little precedent that mirrors the precise facts of Plaintiff's phone conversation with Defendant regarding Plaintiff's attendance at the August 7 hearing. However, the Sixth Circuit holds court clerks are immune from suit when acting with connection with the orders of a judge. *See Foster v. Walsh*, 864 F.2d 416, 417-18 (6th Cir. 1988). Failure of a clerk to provide requested information to a party is likewise protected as a judicial act. *See Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002). And even when a clerk of courts makes an error, they are afforded

7

immunity. *Pitts v. Quilter*, 2014 WL 3828289, *4 (N.D. Ohio) ("Acts committed in error or in excess of jurisdiction will not abrogate immunity, even if it results in grave procedural errors.") (internal quotation and citation omitted). Indeed, "immunity applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function, unless those acts are done in the clear absence of subject matter jurisdiction of the court." *Id.* (internal quotation and citation omitted). Defendant communicated with Plaintiff in connection with a judge's order for Plaintiff to appear, making the action judicial in nature and function; it was "so . . . intertwined with the judicial process that these persons [performing such actions] are considered an arm of the judicial officer who is immune." *Bush*, 38 F.3d at 847; *see also Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000) (finding improper legal advice by a judicial officer was "in excess of his authority" rather than "in clear absence of all jurisdiction"). Therefore, Defendant is immune from suit for this action.

Defendant's improper filing or communication regarding the return of the warrant is likewise a judicial act and therefore protected by absolute immunity. Plaintiff argues the facts in this case are distinct from a scenario in which a clerk fails to recall an arrest warrant; that is, however, exactly the action alleged by Plaintiff which led to Plaintiff's second arrest. A court clerk's involvement with the issuance of arrest warrants is a judicial act and is protected by absolute immunity. *Foster*, 864 F.2d at 417. A clerk's involvement in failing to recall an executed or invalid warrant is likewise a judicial act, *see Saum v. Savage*, 2014 WL 3105020, at *3 (S.D. Ohio), and "[w]hen a clerk files or refuses to file a document with the court, he is entitled to immunity, provided the acts complained of are within the clerk's jurisdiction" *Harris v. Suter*, 3 F. App'x 365, 366 (6th Cir. 2001).

Defendant's failure to inform the court of Plaintiff's completion of the SUCCESS program by filing the Certificate of Attendance is a judicial act for similar reasons. There is some dispute as to when the certificate was filed. Construing the facts in the light most favorable to Plaintiff and assuming the Certificate of Attendance was not timely filed, Defendant is still protected by absolute immunity. A misfile or failure to file documents by a court clerk is judicial in nature and function and therefore entitled to protection from suit. *Id.*; *see also Jackson v. Laria*, 2018 WL 6504367, *4 (N.D. Ohio) ("[A clerk of courts'] simple failure to transmit a document or information does not eliminate his entitlement to quasi-judicial immunity."). Defendant is thus entitled to absolute quasi-judicial immunity for all actions alleged by Plaintiff.[3]

Sovereign and Qualified Immunity

In addition to absolute quasi-judicial immunity, Defendant is protected in her official capacity as Clerk of Courts by sovereign immunity. Under the Eleventh Amendment, sovereign immunity bars suit against a state or its agencies, unless the state has waived that immunity or Congress has overridden it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). "An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and so Plaintiff's federal claims against Defendant in her official capacity are treated as claims against the Marion County Common Pleas Court. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A lower-level state court of record is considered an arm of the state, rather than a "person," for the purposes of § 1983 and the Eleventh Amendment; thus the court is immune from suit under the doctrine of sovereign immunity. *Ward v. City of Norwalk*, 640 F. App'x 462, 464-65 (6th Cir.

---

3. Plaintiff's Amended Complaint asserts violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments *See* Doc. 16, at 13-14, 16. However, these claims must fail because Defendant is protected by quasi-judicial immunity for all the specific actions identified by Plaintiff, as set forth above.

9

2016). An exception to sovereign immunity for judges and clerks of courts in their official capacities exists when seeking declaratory or injunctive relief. *Ex parte Young*, 209 U.S. 123 (1908). This exception does not, however, apply to claims for monetary relief. *Quern v. Jordan*, 440 U.S. 332, 338 (1979). Defendant is therefore entitled to the protection of sovereign immunity for claims against her in her official capacity.

Defendant, in her individual capacity, is further protected from § 1983 claims under the doctrine of qualified immunity. Qualified immunity "shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009) (quoting *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006)) (internal quotation marks omitted). There is a two-part test for determining the applicability of qualified immunity: first, whether a constitutional right has been violated, when considering the allegations in a light most favorable to the party injured, and second, whether that right was clearly established. *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). "The doctrine protects all but the plainly incompetent or those who knowingly violate the law." *Id.* Plaintiff bears the burden of showing a right is clearly established. *Barret v. Steubenville City Sch.*, 388 F.3d 967, 970 (6th Cir. 2004). Defendant carries the burden of showing the challenged act was objectively reasonable. *Tucker v. City of Richmond*, 388 F.3d 216, 220 (6th Cir. 2004).[4]

A "clearly established right", for the purpose of determining whether a public official is entitled to qualified immunity, "is one that is sufficiently clear that every reasonable official would

---

4. Plaintiff notes the possibility of the Supreme Court reconsidering the doctrine of qualified immunity in June 2020. *See* Doc. 19, at 10. The Supreme Court declined to consider the cited cases involving qualified immunity, and thus the law regarding the issue remains the same. *See Baxter v. Bracey*, 140 S. Ct. 1862 (2020).

have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

Although Plaintiff contends Defendant violated the clearly established duties of the Clerk of Court's office in the Ohio Revised Code, Plaintiff fails to specify any right clearly established by the Code and violated by Defendant. *See* Doc. 16, at 5 (citing Ohio Rev. Code § 2303, et seq.); Doc. 19, at 10 (citing "the duties of the clerk of court's office as outlined in the Ohio Revised Code"). Moreover, Defendant's alleged violation of her statutory duties does not necessarily equal a violation of Plaintiff's constitutional rights. *See Jones v. Union Cty., Tenn.*, 296 F.3d 417, 429 (6th Cir. 2002) ("[A] violation of a state statute does not create a liberty interest or property right under the Due Process Clause of the Fourteenth Amendment."); *Harrill v. Blount Cty., Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995) ("The violation of a right created and recognized only under state law is not actionable under § 1983."). And a general constitutional claim does not solve this problem. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Because Plaintiff has not met his burden to show a clearly established right violated by Defendant's conduct, Defendant is entitled to qualified immunity in her individual capacity.

State Claims

Because the Court dismisses Plaintiff's federal law claims, it declines to exercise jurisdiction over his state law claims. This court has jurisdiction over Plaintiff's state tort claims pursuant to 28 U.S.C. §1367, but "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Unnecessary state law decisions should be avoided, and when federal claims are dismissed before trial, any attached state

11

claims should be dismissed as well. *Id.* The Court declines to exercise supplemental jurisdiction and thus dismisses – without prejudice – Plaintiff's state law claims of false arrest and imprisonment, intentional infliction of emotional distress, and negligence.

## CONCLUSION

Defendant is immune to suit in her personal and professional capacities, which necessitates dismissal of Plaintiff's federal claims against her. In the absence of remaining federal claims, Plaintiff's attached state law claims are also rightly dismissed.

For the foregoing reasons, good cause appearing, it is

ORDERED THAT Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 17) be, and the same hereby is, GRANTED.

    s/ James R. Knepp II
United States Magistrate Judge